1

2

3

4

5

6

7

8

9          IN THE UNITED STATES DISTRICT COURT

10        FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12    ROBERT G. RUSSELL, AK4805,        )
                                        )
13              Petitioner,             )    No. C 15-2709 CRB (PR)
                                        )
14        vs.                           )    ORDER DENYING PETITION
                                        )    FOR A WRIT OF HABEAS
15    ROBERT W. FOX, Warden,            )    CORPUS AND A CERTIFICATE
                                        )    OF APPEALABILITY
16              Respondent.             )
      _____ )    (ECF No. 23)

17

18        Petitioner was convicted by a jury in Santa Cruz County Superior Court of

19    various offenses arising from a traffic accident in which, while driving drunk, he

20    struck a pedestrian who was walking in the road with his wife.  The jury

21    specifically found petitioner guilty of driving under the influence of alcohol and

22    causing injury, driving with a proscribed blood-alcohol content and causing

23    injury, leaving the scene of an accident, misdemeanor driving under the influence

24    of alcohol, misdemeanor driving with a proscribed blood-alcohol content, and

25    failure to appear in court.  Following a bench trial, the court found that petitioner

26    had six prior strike convictions and six prior serious felony convictions and, on

27    December 2, 2011, sentenced him to fifty years to life in state prison pursuant to

28    California's Three Strikes Law.

1      Petitioner appealed, but the California Court of Appeal affirmed the

2  judgment of conviction and the Supreme Court of California denied review.

3  Petitioner then sought collateral relief by way of habeas corpus petitions in the

4  state courts.  The Santa Cruz County Superior Court denied his habeas petition on

5  December 8, 2014, as did the California Court of Appeal on February 6, 2015

6  and Supreme Court of California on May 20, 2015.

7      Petitioner then filed the instant federal petition for a writ of habeas corpus

8  under 28 U.S.C. § 2254.  Per order filed on July 10, 2015, the court found that the

9  petition appeared to state cognizable claims under § 2254, when liberally

10  construed, and ordered respondent to show cause why a writ of habeas corpus

11  should not be granted.  Respondent has filed an answer to the order to show cause

12  and petitioner has filed a traverse.

13          **FACTUAL BACKGROUND**

14      The California Court of Appeal summarized the facts of the case as

15  follows:

16      On September 25, 2009, someone driving a red Ford Mustang
        struck and injured Om Anand, who was walking with his wife in a
17      bicycle lane.  The person driving the Mustang drove away after the
        accident.
18

19      After the vehicle had struck Anand, a witness saw the car roll onto
        a traffic island and come to a stop.  At that time another witness
20      noticed the car, which was sitting atop the island.  This second
        witness was not aware the car had struck someone, but he did
21      notice that the windshield was damaged on the passenger side.  The
        second witness glanced inside the car and later told police he
22      discerned that the driver was a dark-complexioned white or Latino
        man, 30 to 35 years old, with long, dark, wavy or curly hair.  He
23      also told police the driver's hair was down to his ears and neck and
        that he may have had a mustache.  His view of the driver was
24      obscured because it was dark and the driver was talking on a cell
        phone, which partly blocked his view of the driver's face, but he
25      was able to clearly discern that the driver was the car's only
        occupant.

26      At trial, the second witness testified he could not discern the
        driver's race or age as he glimpsed inside the car in the aftermath of
27

28                2

the accident, notwithstanding he had previously told a defense investigator the driver was African-American.[1]

After sitting atop the traffic island for a short period of time, the driver drove the car to a fire station two blocks away, and parked in such a way as to block the path of an emergency response vehicle that was responding to the accident scene. Firefighters, including a fire captain who testified at trial, noticed that the driver of the car was an African-American man; the captain testified that the driver appeared to be looking at a cell phone or other handheld electronic device. The captain also discerned that the man was light-complexioned with short hair and a thin black mustache, but he could not identify defendant in a photographic lineup.

About an hour after the accident, a Santa Cruz police officer saw the accident-involved vehicle. It was parked. As the officer pulled over, the driver initially drove away, but stopped at the officer's command. The driver was defendant; he was the car's only occupant. His speech was slurred and his eyes were "sleepy looking." He staggered out of the car, and, unable to maintain his balance, fell over. He twice claimed the cause of the accident was that someone had collided with him; he used an expletive to characterize the purported offending driver.

Field sobriety tests showed defendant had a "high level of impairment," and a later breath test at the police station showed a blood-alcohol concentration of 0.20 grams per deciliter, more than double the legal limit (Veh. Code, §§ 23152, subd. (b), 23153, subd. (b)). An expert witness qualified to give testimony on breath-based blood-alcohol testing testified that at the time of the accident defendant's blood-alcohol concentration would have been 0.23 or 0.24 grams per deciliter, which the jury would later be instructed was about triple the legal limit.

When defendant later went to retrieve personal belongings from his impounded car, he told the officer who helped with that process that he had been driving while intoxicated at the time of the accident and thought he had struck someone during the incident, but his memory of the accident was clouded by the degree of his intoxication. At a Department of Motor Vehicles hearing at which defendant sought to have his driver license restored, he told the hearing officer that he had consumed three beers and three shots of a liqueur before the collision, but that he had no recollection of the accident itself.

On the failure-to-appear charge, a court supervisor testified that defendant disobeyed a court order by failing to appear in court on July 7, 2010.

---

[1]Defendant is African-American. He was 53 years old at the time of the accident and had short hair.

3

1
2
3
4
5

> The defense did not dispute that the car belonged to defendant, that it (the car) was involved in the hit-and-run accident, or that defendant was drunk at the time of the accident.  The defense did, however, dispute that defendant was the person driving the car, a necessary element for conviction on the intoxication-based and evasion offenses alleged in counts one through five.  With regard to the failure-to-appear charge, the defense did not dispute that defendant failed to appear in court as ordered, but disputed that his failure was willful, a necessary element of that offense.

6   People v. Russell, No. H037744, 2014 WL 1348813, at **2–3 (Cal. Ct. App. 6th

7   Dist. Apr. 7, 2014) (ECF No. 20-37) (footnote renumbered).

8                                    **DISCUSSION**

9   A.      Standard of Review

10          This Court may entertain a petition for a writ of habeas corpus "in behalf

11   of a person in custody pursuant to the judgment of a State court only on the

12   ground that he is in custody in violation of the Constitution or laws or treaties of

13   the United States."  28 U.S.C. § 2254(a).

14          The writ may not be granted with respect to any claim that was

15   adjudicated on the merits in state court unless the state court's adjudication of the

16   claim: "(1) resulted in a decision that was contrary to, or involved an

17   unreasonable application of, clearly established Federal law, as determined by

18   the Supreme Court of the United States; or (2) resulted in a decision that was

19   based on an unreasonable determination of the facts in light of the evidence

20   presented in the State court proceeding."  Id. § 2254(d).

21          "Under the 'contrary to' clause, a federal habeas court may grant the writ

22   if the state court arrives at a conclusion opposite to that reached by [the

23   Supreme] Court on a question of law or if the state court decides a case

24   differently than [the] Court has on a set of materially indistinguishable facts."

25   Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  "Under the 'reasonable

26   application clause,' a federal habeas court may grant the writ if the state court

27

28                                          4

identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision.  Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).  While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied.  Id.

B.    Claims & Analysis

Petitioner raises four cognizable claims for relief under § 2254: (1) the trial court's failure to hold a hearing on his written request to substitute counsel amounted to a denial of his right to counsel in violation of the Sixth Amendment; (2) the trial court's abuse of its discretion in refusing to dismiss petitioner's prior strike convictions amounted to a violation of due process and resulted in a cruel and unusual sentence in violation of the Eighth Amendment; (3) defense counsel's failure to argue, present evidence, and allow petitioner to testify that he did not receive seven prior strike convictions amounted to ineffective assistance

of counsel in violation of the Sixth Amendment; and (4) petitioner's sentence is unauthorized under the Supreme Court of California's decision in People v. Vargas, 59 Cal. 4th 635 (2014).

### 1. Denial of Right to Counsel

Petitioner claims that the trial court's failure to hold a hearing on his written request to substitute counsel amounted to a denial of his right to counsel under the Sixth Amendment. Pet. (ECF No. 1) at 6. The claim is without merit.

The record shows that petitioner made several motions/requests to substitute counsel under People v. Marsden, 2 Cal. 3d 118 (1970),[2] and that the trial court conducted more than one hearing. The California Court of Appeal summarized the relevant procedural background as follows:

> On July 6, 2010, defendant made his first Marsden motion during motions in limine. The court conducted a Marsden hearing. Defendant told the court his defense counsel was "a wonderful man" but he wanted a different lawyer who would undertake further investigation of his case. He asserted that any automobile incident in which he might be involved had been preceded by "racial overtones" in the form of poor service afforded to him and his wife at a bar earlier that day. He suspected someone had doctored his drink at the bar, making his intoxicated state not entirely voluntary. He wanted his attorney to research the history of any racial incidents at the bar. He also complained that his blood-alcohol concentration test had not been signed by the police officer who administered it.
>
> Counsel replied to the trial court that his investigator had been to the bar and contacted the employees who were working on the night of the accident. None of them remembered defendant, and counsel knew of no past race-based incidents at the bar. He also told the court that defendant wanted to move for a change of venue and a continuance, but he had explained to defendant that he saw no reason to bring these motions. Counsel further told the court that defendant was concerned to reach a plea agreement, and that counsel had

---

[2] Marsden requires the trial court to permit a criminal defendant requesting substitution of counsel to specify the reasons for his request and generally to hold a hearing. This California rule substantially parallels the one prescribed by the Ninth Circuit. See Chavez v. Pulley, 623 F. Supp. 672, 687 n.8 (E.D. Cal. 1985).

1   been trying to negotiate one, but so far the parties had not
    been able to reach agreement.

2

3   The trial court found defendant had not shown grounds to
    substitute counsel and denied the motion.

4   On January 5, 2011, defendant made a second Marsden
    motion.  That same day, the trial court conducted a Marsden

5   hearing on the second motion, at which it considered a list of
    complaints defendant had about his counsel.  The court began

6   by reciting the list:

7   "THE COURT: [¶] . . . I'm going to read it out loud.

8   "'Counsel did not diligently and actively participate in the full
    and effective preparation of my case or investigate carefully

9   all defenses of fact or law that may have been available.

10  "'Counsel did not confer with me without due delay and as
    necessary to elicit matters of defense.

11

12  "'He did not promptly advise me of my rights and take all
    actions necessary to preserve them.

13  "'He did not make appropriate motions to suppress evidence.

14  "'I was denied the effective assistance of counsel by reason of
    counsel's failure to perform according to the standards

15  imposed,' parentheses, 'as by inadequate pretrial preparation.

16  "'Counsel failed to advise me of my status, which deprived
    me of my right to meaningfully participate in my defense by

17  moving to have counsel replaced or by representing myself.

18  "'No defense strategy has been formulated'—I'm not sure this
    is the right word: '. . . are discussed at this late stage.

19

20  "'Counsel failed to object or move to strike hearsay testimony
    introduced by the prosecution.

21  "'Counsel did not file any pretrial motions.

22  "'Counsel did not file any preliminary hearing motions,
    discovery motions, informal and formal points and authorities.

23

24  "'Counsel did not investigate carefully all defenses of fact and
    law, and by not doing that, it resulted in withdrawing a crucial
    defense from the case.

25

26  "'I requested maintenance and accuracy records for
    Breathalyzer machines and had they been properly serviced or
    calibrated.  Officer also did not sign off on the Breathalyzer

27

28                                  7

testing.  I was told . . . it was nothing.  I've learned that the
Breathalyzer test could be inadmissible evidence.

"'Counsel never questioned hearsay statements by an officer
who had only two years on the force.  It was never established
if he had completed a training course certified by the
Commission on Peace Officer Standards and Training. . . .
The average officer needs at least five years law enforcement
experience, plus the POST training, and the officer must be
more than just a reader and have sufficient knowledge of the
crime or circumstances under which out-of-court statements
were made so as to meaningfully assist the magistrate in
assessing the reliability of his statements.  This was not
challenged.

"'Counsel was advised I was asleep in the car when arrested,
not driving. Counsel told me no one would believe me
because I was drunk and a police officer said I was.

"'Counsel could have filed formal discovery points and
authorities in support of a motion for discovery. I would have
had access to radio transmissions and other evidence.

"'I brought up moral turpitude involving police officers under
Brady versus Maryland [(1963) 373 U.S. 83], and he acted
like he was not aware of this case.

"'I was charged with two crimes.  Now I have ten, and I have
no idea how I got them.

"'Counsel advised me there was no difference between
actually driving a car drunk or being asleep in the car.  There
is a difference.

"'I was told by counsel there was no motion I could file to
stop what was happening in court.

 "'On December 9th, at a bail hearing, the DA said
eyewitnesses said the driver of the car was black.  At the
preliminary hearing, the first on-scene officer also lied about
eyewitness testimony, until the transcript was read back to
him, and he then stated eyewitnesses said the driver of the car
on September 25th, '09 was white, and that was what other
witnesses had said, and that information was reported to
dispatch for APB [all-points bulletin].

"'This is a point where Counsel has failed to declare prejudice
against me. One of these men [is] lying about the eyewitness
testimony.

"'Counsel did fail to subpoena witnesses favorable to my
defense.  He deprived me of testimony critical to my defense.

1   ‟'Counsel has failed to impeach witnesses.  He has not
    presented any evidence at a motion or a writ hearing critical
2   to my defense.

3   ‟'Counsel has failed to declare prejudice against me at any
    time and, due to said failure, has taken on the role of a
4   surrogate prosecutor against my interests.

5   ‟'The record should clearly show that Counsel failed to
    research applicable law, and it has deprived me of a resolution
6   of critical factual issues supporting my primary defense, and
    nothing he has done has been based on a tactical decision or
7   judgment.

8   ‟'I'm entitled to relief.  I have shown Counsel has not
    provided adequate representation.  Therefore, I feel I am
9   entitled to the relief prayed for.'

10  "Did I read that correctly, Mr. Russell?

11  "THE DEFENDANT: Yes, ma'am.

12  "THE COURT: All right.  Now, let's go through this."

13  After a lunch break, defendant withdrew his <u>Marsden</u> motion,
    stating he had "overreacted" in presenting these complaints.
14  He "apologize[d] for wasting the Court's time."

15  Between February 4, 2011, and the start of trial on April 19,
    2011, defendant wrote a number of handwritten letters to the
16  trial court that are included in the clerk's transcript.  Three of
    the letters included a request for new counsel and/or
17  complaints about counsel.  These letters were dated February
    21, March 14, and March 30, 2011.
18
    In his February 21, 2011 letter, defendant, citing <u>Marsden</u>,
19  asked the trial court to replace his counsel.  He asserted
    counsel had failed to confer with him on defense strategy and
20  had not moved for dismissal of his case based on purportedly
    perjured testimony given at two hearings even though he
21  (defendant) knew the prosecutor had presented some of that
    testimony knowing it to be perjurious.  We note that these
22  assertions had been included in the second <u>Marsden</u> motion
    the trial court had begun to consider before defendant
23  withdrew the motion.

24  On March 14, 2011, defendant wrote another letter to the
    court, which began: "I have yet again asked for separation
25  from my lawyer.  This is not a ploy to hinder [or] distract
    from the case at hand, but my life as well my family[']s lives
26  are at stake and I have not received a rational understanding
    of my lawyer[']s actions."  Defendant essentially repeated his
27

28                                    9

written allegations from February 21 and raised an additional allegation that the court had also recited in the hearing on his second <u>Marsden</u> motion—that the prosecution had deliberately failed to disclose exculpatory evidence to the defense.

On March 30, 2011, defendant again wrote to the court, asserting, as he had during the hearing on his second <u>Marsden</u> motion, that defense counsel, in failing to "declare prejudice and/or conflict," had "taken on the role of a surrogate prosecutor." He also asserted that his counsel had failed to challenge a 1990 strike prior on the ground that his guilty plea in that case was defective. He asked the court to dismiss the case entirely.

On April 7, 2011, defendant was present in court. The trial court proceeded by stating that defendant had sent it more letters. It provided copies of some of these letters to counsel, although the record is not clear which ones were provided. The trial court told defendant it was not in a position to reply to either correspondence or questions. Defendant stated he 'just wanted to bring it to the court's attention." The court noted that defense counsel had filed a motion to set aside the information and stated, "that takes care of the issues that [defendant] wrote me about giving his concerns. We're going to have a hearing on the matter. We're going to have argument on the law and the Court has the transcript which has been provided."

Defendant did not interpose an objection to the trial court's statement that the issues he had raised in his various items of correspondence had been resolved. A fortiori, he did not mention <u>Marsden</u> after the court spoke.

Eight days later, the trial court conducted a hearing on the motion to set aside the information and denied it.

In August through October of 2011, after defendant had been convicted and was awaiting sentencing, he wrote more letters, both to the trial court and to his counsel. One letter to the court, dated August 4, 2011, states, "I have asked for new counsel[; I've outlined] my reasons in prior letters." The letter stated that defendant had been "sadly deceived by counsel" and that he cannot "trust counsel's tactics" or his "integrity." In another letter, file-stamped August 22, 2011, defendant complained further about counsel and moved for a post-conviction <u>Marsden</u> hearing. He maintained defense counsel had failed to adduce exculpatory evidence at trial and to ask for a favorable jury instruction. He concluded that because of counsel's "past ineffective assistance we have become embroiled in such an irreconcilable conflict that ineffective representation will continue." Defendant renewed

his complaints about counsel in letters dated August 29 and September 30, 2011, citing Marsden in the August 29 letter.

On October 28, 2011, the trial court conducted a third Marsden hearing—this time to address defendant's post-conviction complaints.[3]  Defendant asserted that defense counsel had presented no evidence despite his of risk of receiving a life sentence.  He asserted that his wife could have supplied exculpatory evidence.  He also asserted that counsel did not tell him about the defense strategy.  Finally, he complained, in essence, that counsel failed to summon a potential witness who would have offered exculpatory evidence relating to the failure-to-appear charge.

The trial court denied defendant's motion.  It found that "there was clearly effective representation at the trial."  It explained its reasoning: "Tactical decisions are for the attorney to present.  You may consider the evidence one-sided, Mr. Russell.  That's probably because it was overwhelming[ly] against you, and the fact that you're disappointed and you would want a different outcome does not mean in any way that [counsel] was not an effective advocate on your behalf.  He was . . . . unrelenting . . . but the truth is the evidence against you was overwhelming, and although you consider drunk driving to be an accident, the law does not consider it to be an accident, and although you were very focused on what you hoped would be a civil settlement with the victim such that you wouldn't have criminal charges, that doesn't mean that that's admissible evidence or that the charges against you could have been dismissed or that [counsel] did not pursue actively on your behalf every opening that he saw with respect to creating doubt on behalf of the different eyewitnesses and these kinds of things.

"With respect to the failure to appear and return to court, I think those circumstantial inferences were overwhelming as well.  You failed to appear in the middle of your last jury trial, as the Court recalls. [¶] I do recall [counsel] presenting some evidence to the jury on this.  There were some stipulations, if I recall, to some of the minutes, I believe."

Following counsel's agreement with the trial court that he had presented evidence on the failure-to-appear charge, the court summarized its findings: "So to the extent that he was able to produce something on your behalf, he certainly did, and I'm not going to find that there's been any suggestion that he did not vigorously and more than adequately represent you at

---

[3]Defendant does not raise a claim about the post-conviction Marsden proceedings.  We describe them here to provide context.

your jury trial."  It then denied defendant's post-conviction <u>Marsden</u> motion.

<u>Russell</u>, 2014 WL 1348813, at **3–7 (footnote renumbered).

The denial of a motion to substitute counsel may implicate a defendant's Sixth Amendment right to counsel and be properly considered on federal habeas review.  <u>Bland v. Cal. Dep't of Corr.</u>, 20 F.3d 1469, 1475 (9th Cir. 1994), <u>overruled on other grounds by</u> <u>Schell v. Witek</u>, 218 F.3d 1017 (9th Cir. 2000) (en banc).  When a defendant moves to substitute counsel, the trial court should make an appropriate inquiry into the grounds for such a motion and rule on the merits of the motion before the case goes forward.  <u>See</u> <u>Schell</u>, 218 F.3d at 1025; <u>Bland</u>, 20 F.3d at 1475–76.  But regardless of whether the trial court ruled on the motion or failed to do so, the inquiry for a federal habeas court is whether the trial court's error "actually violated [the defendant's] constitutional rights in that the conflict between [the defendant] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment."  <u>Schell</u>, 218 F.3d at 1026.

The California Court of Appeal rejected petitioner's claim that the trial court's failure to hold a hearing on his written request to substitute counsel amounted to a denial of his Sixth Amendment right to counsel:

> We find no <u>Marsden</u> error.  As described, defendant gave the trial court a long list of complaints—the court recited 26 itemized complaints—and it held a hearing on them, with defendant ultimately withdrawing them and apologizing for undue consumption of court time.  Defendant's subsequent written complaints renewed those he had already withdrawn, and when the court said, on April 7, 2011, that it had taken note of his correspondence and believed a pending hearing would resolve his concerns, he remained silent, thereby acquiescing to that ruling.
>
> "A trial court errs under <u>Marsden</u> by not affording a criminal defendant the opportunity to state all his reasons for dissatisfaction with his appointed attorney.  [Citations.]  On the other hand, a

12

defendant is not entitled to keep repeating and renewing complaints that the court has already heard."  (People v. Vera (2004) 122 Cal. App. 4th 970, 980.)  "Defendant had been allowed to air his complaints [about counsel] . . . .  His renewal, one week later, of a similar accusation did not compel the court to conduct an additional hearing under Marsden" (People v. Clark (1992) 3 Cal. 4th 41, 104); "the trial court was not required to afford a hearing each time defendant made the same accusations" (ibid.).

To hold differently would be to risk allowing creative defendants to engage in gamesmanship by means of "'proclivity to substitute counsel'" (People v. Williams (2013) 56 Cal. 4th 165, 194)—i.e., by making repeated and repetitious Marsden motions.  (See People v. Hill (1983) 148 Cal. App. 3d 744, 762, fn. 9 ["This court is not oblivious to the 'game' quality of many Marsden/Faretta proceedings."].)  Similar problems have arisen before, not just in People v. Vera, supra, 122 Cal.App.4th 970 and People v. Clark, supra, 3 Cal.4th 41.  (See People v. Lynch (2010) 50 Cal.4th 693, 719–721, disapproved on other grounds in People v. McKinnon (2011) 52 Cal.4th 610, 637–638, 643; People v. Barnett (1998) 17 Cal.4th 1044, 1082, 1090, 1103; People v. Gallego (1990) 52 Cal.3d 115, 158.)  The situation in Clark points to the abuse inherent in repetitive Marsden claims: "Defendant's [interrelated Marsden, Faretta,[2] and ineffective assistance of counsel] claims that counsel was 'unprepared' were never substantiated. Defendant's own writings suggest that the claims of unpreparedness were an attempt to inject error into the record. Moreover, although defendant claimed that counsel neglected to interview 'hundreds' of witnesses, he failed to identify any such witness or to demonstrate any relevant testimony these unidentified witnesses might offer.  Indeed, there is no reason to believe that defendant would have been satisfied with the services of any attorney appointed to represent him.  [¶] In this case, any conflict between defendant and his attorney was manufactured by defendant himself. He refused to accept that there were any matters within the province of counsel to decide.  He desired to control all trial decisions and to make his attorneys subservient to his whims. He has not shown the impairment of the right to effective assistance of counsel or that any lack of communication was the fault of anyone but himself." (Clark, supra, 3 Cal.4th at p. 118.)

A trial court should acknowledge receipt of a Marsden motion or other communication raising complaints about counsel in a way that implicates Marsden, if only to state that the motion or communication is repetitive, vexatious, or otherwise barred for procedural reasons.  Doing so preserves for the record that the court was aware of the issue.  The court here expressly acknowledged receipt of defendant's letters.

---

[2] Faretta v. California (1975) 422 U.S. 806 (criminal defendants generally entitled to represent themselves at trial).

1    There is a significant question whether the correspondence
     received by the court in this case properly invoked defendant's
2    <u>Marsden</u> rights.  But even if defendant was raising another
     <u>Marsden</u> motion on April 7, 2011—something that is not clear,
3    inasmuch as he never mentioned <u>Marsden</u> on that day—the court
     engaged in a direct colloquy with defendant about the concerns
4    raised in his letters.  As noted, defendant stated he "just wanted to
     bring it to the court's attention."  The court responded to defendant,
5    commenting that defense counsel had filed a motion to set aside the
     information.  It stated, "that takes care of the issues that
6    [defendant] wrote me about giving his concerns.  We're going to
     have a hearing on the matter.  We're going to have argument on the
7    law and the Court has the transcript which has been provided."

8    This colloquy indicates that either defendant abandoned any
     motion he may have made, as he had done with his second
9    <u>Marsden</u> motion, or he accepted the court's disposition of any such
     motion, since his underlying concerns had been addressed.  It is not
10   as if defendant was unaware of his <u>Marsden</u> rights on April 7,
     2011.  He had already made two <u>Marsden</u> motions and he would
11   make another one months later, following his conviction.  And it is
     not as if the court was inattentive to defendant's concerns about
12   trial counsel.  It repeatedly addressed his <u>Marsden</u> motions, before
     and after his conviction.  We find no error.
13
     As for defendant's constitutional claim, "'[R]ejection on the merits
14   of a claim that the trial court erred ... necessarily leads to rejection
     of the newly applied constitutional "'gloss'" as well.  No separate
15   constitutional discussion is required in such cases, and we therefore
     provide none.'"  (<u>People v. Rivas</u> (2013) 214 Cal.App.4th 1410,
16   1435.)

17   <u>People v. Russell</u>, 2014 WL 1348813, at **14–16 (footnote renumbered).

18        The California Court of Appeal's rejection of petitioner's claim that the

19   trial court's failure to hold a hearing on his written request to substitute counsel

20   amounted to a denial of his Sixth Amendment right to counsel was not contrary

21   to, or involved an unreasonable application of, clearly established Supreme Court

22   precedent, nor was it based on an unreasonable determination of the facts.  <u>See</u>

23   28 U.S.C. § 2254(d).  The record amply supports the state appellate court's

24   determination that the trial court's inquiry into petitioner's complaints about

25   counsel was adequate—the trial court considered petitioner's various complaints

26   in a July 6, 2010 <u>Marsden</u> hearing during motions in limine, an April 7, 2011

27

28                                      14

Marsden hearing in conjunction with a motion to set aside the information and an October 28, 2011 Marsden hearing after petitioner had been convicted by the jury, and denied them for lack of merit. Cf. Schell, 218 F.3d at 1025 (Sixth Amendment requires no more than an "appropriate inquiry" and a ruling "on the merits"). The record also supports the state appellate court's ultimate rejection of petitioner's Sixth Amendment claim because there is no evidence that "the conflict between [petitioner] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." Id. at 1026. Instead, as the trial court found after its third Marsden hearing, petitioner's complaints about counsel merely focused on petitioner's disagreements with counsel's tactical decisions and did not indicate a significant breakdown in the attorney-client relationship. This is not enough to establish an irreconcilable conflict resulting in the constructive denial of assistance of counsel. See, e.g., Stenson v. Lambert, 504 F.3d 873, 886–87 (9th Cir. 2007) (no irreconcilable conflict where defense counsel refused to pursue defendant's suggested trial strategy that counsel did not believe would succeed, and defendant and second-chair attorney were communicating with each other). Nor is petitioner's mere speculation that his preferred tactical decisions would have fared better than counsel's enough to establish that he was prejudiced by his conflict with counsel. See Strickland v. Washington, 466 U.S. 668, 693 (1984) (ineffectiveness claims require that petitioner affirmatively prove prejudice). Petitioner is not entitled to federal habeas relief on his claim that the effective denial of his written request to substitute counsel amounted to a denial of his right to counsel under the Sixth Amendment. See 28 U.S.C. § 2254(d).

    2.    Abuse of Discretion

1    Petitioner claims that the trial court's abuse of discretion in refusing to

2    dismiss his prior strike offenses under <u>People v. Superior Court (Romero)</u>, 13

3    Cal. 4th 497 (1996),[4] amounted to a violation of due process and resulted in a

4    cruel and unusual sentence in violation of the Eighth Amendment.  Pet. at 8.

5                    a.    <u>Due Process</u>

6    Although the constitutional guarantee of due process applies at

7    sentencing, <u>see</u> <u>Gardner v. Florida</u>, 430 U.S. 349, 358 (1977), it is well

8    established that a state court's errors in the interpretation or application of state

9    sentencing laws generally are not cognizable on federal habeas review, <u>see</u>

10   <u>McGuire v. Estelle</u>, 502 U.S. 62, 67-68 (1991).  "Absent a showing of

11   fundamental unfairness, a state court's misapplication of its own sentencing laws

12   does not justify federal habeas relief."  <u>Christian v. Rhode</u>, 41 F.3d 461, 469 (9th

13   Cir. 1994).

14   Petitioner claims that the trial court violated his right to due process when

15   it failed to exercise its discretion to dismiss the prior strikes associated with his

16   1990 conviction because that conviction was dismissed under California Penal

17   Code section 1385.  Pet. at 8.  But the record makes clear that petitioner's 1990

18   conviction was not dismissed; rather, after petitioner pleaded guilty to assault

19   with intent to commit rape, first degree burglary, attempted murder, aggravated

20   assault, and false imprisonment, he was sentenced to four years incarceration for

21   assault with intent to commit rape and the sentence for the other four counts for

22   which he was convicted was <u>stayed</u> under California Penal Code section 654.

23

24

25   _____

26   [4] In <u>Romero</u>, the Supreme Court of California held that a trial court retains its
     power under California Penal Code section 1385 to strike a prior conviction for

27   purposes of the Three Strikes Law.  <u>See</u> <u>Romero</u>, 13 Cal. 4th at 518-31.

28                                    16

See Oct. 23, 1990 Abstract of Judgment (ECF No. 20-7 at 48-49) at 1–2.[5]  Under

the circumstances, it simply cannot be said that the trial court's refusal to

exercise its discretion to dismiss the prior strikes associated with petitioner's

1990 conviction for assault with intent to commit rape, first degree burglary,

attempted murder, aggravated assault and false imprisonment amounted to a

misapplication of state sentencing law, and much less to fundamental unfairness

in violation of due process.[6]  Petitioner is not entitled to federal habeas relief on

his abuse of sentencing discretion/due process claim.  Accord Miller v. Vasquez,

868 F.2d 1116, 1118–19 (9th Cir. 1989) (whether assault with deadly weapon

qualifies as "serious felony" under California's sentence enhancement provisions

is question of state sentencing law and does not present constitutional claim);

Moore v. Chrones, 687 F. Supp. 2d 1005, 1040 (C.D. Cal. 2010) (claim that trial

---

[5]Petitioner suggests that the October 23, 1990 abstract of judgment lodged into the record by respondent (ECF No. 20-7 at 48–49) must be fabricated because a ten-page report ran by the San Francisco public defender's office on August 6, 2014, that petitioner filed as addendum number two to his traverse (ECF No. 24-2 at 1–9), shows that his 1990 plea provided for the dismissal of all charges after completion of his sentence.  But petitioner filed in support of his petition for a writ of habeas corpus the exact same October 23, 1990 abstract of judgment he now claims is false (see ECF No. 1 at 109–110) and the August 6, 2014 report does not support his contention that all charges associated with his 1990 conviction were dismissed.  The report instead supports the conclusion above that, as part of a plea agreement, petitioner pleaded guilty to assault with intent to commit rape, first degree burglary, attempted murder, aggravated assault and false imprisonment in exchange for a partially stayed sentence and the dismissal of other charges and allegations in the criminal complaint.  Petitioner's purported claim of fabrication of evidence/presentation of false evidence is wholly without merit.

[6]Nor can it be said that the state court's refusal to exercise its discretion to dismiss any of the prior strikes associated with petitioner's other prior convictions amounted to a misapplication of state sentencing law and fundamental unfairness.  After all, the California Court of Appeal's determination that the trial court properly refused to dismiss any of the prior strikes under state sentencing law is binding on this court, see Bradshaw v. Richey, 546 U.S. 74, 76 (2005), and the seriousness of all of the prior strikes more than justifies the trial court's decision not to dismiss any of them.

court abused its discretion in declining to dismiss prior strike conviction is challenge to state court's application of state sentencing laws and "does not create a federal question cognizable in federal habeas review").

### b.    Eighth Amendment

Petitioner claims that his sentence of fifty years to life imprisonment, pursuant to California's Three Strikes Law, constitutes cruel and unusual punishment in violation of the Eighth Amendment because the sentence is disproportionate to his crimes and shocks the conscience.  Pet. at 8. Petitioner's claim is without merit.

"The Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime."  Ewing v. California, 538 U.S. 11, 23 (2003).  A sentence will be found grossly disproportionate only in "exceedingly rare" and "extreme" cases.  Lockyer v. Andrade, 538 U.S. 63, 73 (2003).

In determining whether a sentence is grossly disproportionate under a recidivist sentencing statute, such as California's Three Strikes Law, the court looks to whether such an "extreme sentence is justified by the gravity of [an individual's] most recent offense and criminal history."  Ramirez v. Castro, 365 F.3d 755, 768 (9th Cir. 2004).  In Ramirez, the Ninth Circuit held that a sentence of twenty-five years to life upon conviction of petty theft with prior convictions was grossly disproportionate to the current crime where the previous two strikes did not involve violence and where both strikes were the result of one negotiated plea resulting in a one-year county jail sentence.  365 F.3d at 767–770.  The court noted that this was the "extremely rare case that gives rise to an inference of gross disproportionality."  Id. at 770.

By contrast, in Rios v. Garcia, the Ninth Circuit held that a sentence of

twenty-five years to life upon conviction of petty theft with prior convictions was not grossly disproportionate.  Rios v. Garcia, 390 F.3d 1082, 1086 (9th Cir. 2004).  The Ninth Circuit distinguished Ramirez because the defendant in Rios struggled with a guard to prevent apprehension, his prior convictions of robbery "involved the threat of violence, because his cohort used a knife," and because the defendant had a lengthy criminal history.  Id.; accord Andrade, 538 U.S. at 76 (upholding sentence of two consecutive terms of twenty-five years to life for recidivist convicted of two counts of petty theft with a prior theft conviction and who had four prior strike convictions for burglary).

In the instant case, petitioner was sentenced pursuant to California's Three Strikes Law, which is triggered when a defendant is convicted of a felony, and he has suffered one or more prior "serious" or "violent" felony convictions.  See Cal. Penal Code § 667(e)(2)(A).  Under California's Three Strikes Law at the time of petitioner's sentencing, any felony conviction could constitute the third strike and subject a defendant to a term of twenty-five years to life in prison.  See Andrade, 538 U.S. at 67.

Petitioner's triggering offenses were driving under the influence of alcohol and causing injury, leaving the scene of the accident, and failure to appear in court, all properly charged as felonies under California law.  See Cal. Veh. Code § 23153(a) & (b); Cal. Veh. Code § 20001(a); Cal. Pen. Code § 1320.5.  After a bench trial, the trial court found that petitioner had suffered six prior convictions that qualified as strikes under the Three Strikes Law.  See Dec. 8, 2011 Minute Order (ECF No. 20-7 at 13–14) at 2.  He was sentenced to two consecutive twenty- five years to life terms—or a fifty years to life term—because the failure to appear charge involved different facts and occurred on a separate occasion.  See Cal. Penal Code § 667(c)(6).

The California Court of Appeal rejected petitioner's Eighth Amendment claim on the merits.  See People v. Russell, 2014 WL 1348813, at **13–14.  The court noted that the six prior convictions the trial court found qualified as strikes stem from petitioner's "appalling and depraved victimizations of a six-year-old girl and an 85-year-old woman."  Id. at *13.  The 85-year-old woman "was lucky to survive [petitioner's] sexual assault and strangulation of her," which he committed only "three days after completing parole for molesting a six-year-old neighbor in 1977."  Id. at *10.  The court added that the probation report lists "15 felony offenses and six misdemeanors that [petitioner] has accrued over decades of inability to conform to the law."  Id. at *13.  But even after all that, "he created new victims in the persons of Om Anand and his wife."  Id.  Because petitioner "has spent a lifetime proving himself to be a danger to others," the court concluded that his sentence—"which as a practical matter amounts to imprisonment with very little possibility of parole during his lifetime—is not disproportionate under the state-law test . . . or the federal constitutional tests."  Id.

The California Court of Appeal's rejection of petitioner's Eighth Amendment claim was not contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d).  Based on the gravity of petitioner's triggering offenses and his history of criminal recidivism, which includes multiple crimes of violence, his sentence cannot be said to be grossly disproportionate in violation of the Eighth Amendment.  See Rios, 390 F.3d at 1086; see also Andrade, 538 U.S. at 76 (upholding sentence of two consecutive terms of twenty-five years to life for recidivist convicted of two counts of petty theft with a prior theft conviction and who had four prior strike

1    convictions for burglary); Cacoperdo v. Demosthenes, 37 F.3d 504, 508 (9th Cir.

2    1994) (sentence of ineligibility for parole for forty years not grossly

3    disproportionate when compared with gravity of sexual molestation offenses).

4    Petitioner is not entitled to federal habeas relief on his Eighth Amendment claim.

5             3.     Ineffective Assistance of Counsel

6        Petitioner claims that defense counsel's failure to argue, present evidence,

7    and allow petitioner to testify that he did not suffer seven prior strike convictions[7]

8    resulted in ineffective assistance of counsel in violation of the Sixth Amendment.

9    The claim is without merit.

10       In order to prevail on a Sixth Amendment ineffectiveness of counsel claim,

11    a petitioner must establish (1) that counsel's performance was deficient, i.e., that

12    it fell below an "objective standard of reasonableness" under prevailing

13    professional norms, and (2) that petitioner was prejudiced by counsel's deficient

14    performance, i.e., that "there is a reasonable probability that, but for counsel's

15    unprofessional errors, the result of the proceeding would have been different."

16    Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).  A reasonable

17    probability is a probability sufficient to undermine confidence in the outcome.  Id.

18    at 694.

19       In the instant case, petitioner specifically claims that defense counsel was

20    ineffective in failing to move (and present supporting evidence to) the trial court

21    to: (1) set aside petitioner's 1990 plea on the grounds that the trial court in the

22    1990 case violated California Penal Code sections 1192.7 and 1385 in accepting

23    petitioner's plea, and (2) dismiss the prior strikes associated with the 1990 plea on

24    the ground that the trial court in the 1990 case "dismissed all remaining

---

26        [7]The record shows that the trial court found true only six of seven alleged prior
27   felony strike convictions.  Dec. 8, 2011 Minute Order (ECF No. 20-7 at 12–13) at 2.

28                        21

1   allegations in the interest of Justice."  Pet. at 9.

2       Under California law, a defendant may not move in the trial court to

3   dismiss a prior felony conviction based on a guilty plea unless the prior

4   conviction was based on a guilty plea obtained in violation of the defendants'

5   constitutional rights.  See People v. Sumstine, 36 Cal.3d 909, 922 (1984).  But

6   petitioner asserts only that violations of a state statutory law, i.e., California Penal

7   Code sections 1192.7 and 1385, rendered his 1990 plea agreement invalid.

8   Consequently, any attempt by defense counsel to challenge the validity of

9   petitioner's 1990 plea on the assertion that the plea violated state statutory law

10  limiting the use of plea bargains would have been futile.  Defense counsel "cannot

11  have been ineffective for failing to raise a meritless objection" or motion.  Juan H.

12  v. Allen, 408 F.3d 1262, 1273 (9th Cir. 2005).

13      Nor could defense counsel have been ineffective for failing to move to

14  dismiss the prior strikes associated with the 1990 plea on the ground that the trial

15  court in the 1990 case dismissed all the priors.  As noted earlier, the record makes

16  clear that none of the five prior strikes associated with petitioner's 1990

17  conviction were dismissed; rather, after petitioner, as part of a plea agreement,

18  pleaded guilty to assault with intent to commit rape, first degree burglary,

19  attempted murder, aggravated assault, and false imprisonment, he was sentenced

20  to four years incarceration for assault with intent to commit rape, the sentence for

21  the other four counts for which he was convicted was stayed, and all other charges

22  and allegations in the criminal complaint were dismissed.  See Oct. 23, 1990

23  Abstract of Judgment (ECF No. 20-7 at 48–49) at 1–2.  Defense counsel was not

24  ineffective for failing to raise a motion that would have been denied as meritless.

25  See Juan H., 408 F.3d at 1273; see also Rupe v. Wood, 93 F.3d 1434, 1445 (9th

26  Cir. 1996) ("failure to take a futile action can never be deficient performance").

27

28                                   22

Petitioner is not entitled to federal habeas relief on his ineffective assistance of counsel claims because he has established neither deficient performance nor prejudice under Strickland.  It simply cannot be said that, had defense counsel moved the trial court as petitioner claims he should have, it is reasonable that the trial court would have granted the motion as meritorious and that there would have been a sentencing outcome more favorable to petitioner.  See Wilson v. Henry, 185 F.3d 986, 990 (9th Cir. 1999).

4.      Unauthorized Life Sentence

Petitioner claims that his life sentence is unauthorized because it does not conform with the Supreme Court of California's decision in People v. Vargas, 59 Cal. 4th 635 (2014).  Pet. at 9.[8]  The claim is without merit.

It is well established that "it is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."  Wilson v. Corcoran, 562 U.S. 1, 5 (2010) (emphasis in original).  Federal habeas relief is not available for violations of state law or for error in the interpretation or application of state law.  See Swarthout v. Cooke, 562 U.S. 216, 219 (2011); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

In Vargas, the Supreme Court of California held that two prior convictions arising out of a single act against a single victim cannot constitute two strikes under California's Three Strikes Law.  Vargas, 59 Cal. 4th at 637.  Petitioner's claim that his life sentence under the Three Strikes Law does not conform with Vargas presents a purely state sentencing law claim not cognizable in federal

---

[8]Petitioner also claims that his life sentence is "unauthorized" because it amounts to cruel and unusual punishment and was the result of ineffective assistance of counsel.  Because the Court addressed these claims earlier, it need not address them again.

23

habeas.  See Swarthout, 562 U.S. at 219; Estelle, 502 U.S. at 67-68.[9]

## CONCLUSION

After a careful review of the record and pertinent law, the Court is satisfied that the petition for a writ of habeas corpus must be DENIED.

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, a certificate of appealability (COA) under 28 U.S.C. § 2253(c) is DENIED because petitioner has not demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The clerk shall enter judgment in favor of respondent, terminate all pending miscellaneous motions (see, e.g., ECF No. 23) as moot and close the file.

SO ORDERED.

DATED: April 18, 2016

CHARLES R. BREYER
United States District Judge

G:\PRO-SE\CRB\HC.15\Russell, R.15-2709.denial.final.wpd

---

[9]Petitioner's state law claim appears to be without merit because, as the California Court of Appeal noted on direct appeal, petitioner's qualifying strikes arise out of his "appalling and depraved victimizations of a six-year-old girl and an 85-year-old woman," People v. Russell, 2014 WL 1348813, at *13 (emphasis added), rather than out of a single act against a single victim, see Vargas, 59 Cal. 4th at 637.

24